Filed: 3/28/2022 5:19 PM
Lynne Finley
District Clerk
Collin County, Texas
By Shelby Rawa Deputy
Envelope ID: 63030589

CAUSE NO. 219-01521-2022 _____

| | | |
|---|---|---|
| SUMAIR ALI INSURANCE GROUP LLC | § | IN THE DISTRICT COURT |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | _____ JUDICIAL DISTRICT |
| | § | |
| GOVERNMENT EMPLOYEES | § | |
| INSURANCE COMPANY; GEICO | § | |
| INSURANCE AGENCY, LLC F/K/A GEICO | § | |
| INSURANCE AGENCY, INC. | § | |
| | § | |
| Defendants. | § | COLLIN COUNTY, TX |

## ORIGINAL PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

Comes now, Plaintiff, SUMAIR ALI INSURANCE GROUP LLC, and files this Original Petition against Defendants, GOVERNMENT EMPLOYEES INSURANCE COMPANY and GEICO INSURANCE AGENCY, LLC formerly known as GEICO INSURANCE AGENCY, INC. ("GIA"), and in support thereof alleges as follows:

### I.   DISCOVERY CONTROL PLAN AND RULE 47 STATEMENT

1. This case is intended to be conducted under discovery control plan Level 3.

Copy from re:SearchTX

2.     At this time, Plaintiff cannot accurately assess the amount of alleged damages, as the information needed to do so is in the possession of Defendants.  In view of these circumstances, Plaintiff does not wish to impose any limit on what Plaintiff may present to the jury or what the jury may consider as a range of damages in this case.  Therefore, Plaintiff makes the following representation in compliance with Tex. R. Civ. P. 47(c), out of abundance of caution:  Plaintiff seeks monetary relief over $1,000,000.00.

## II.     PARTIES

3.     Plaintiff is a limited liability company organized under Texas law, with its principal place of business in Texas.  At all relevant times, Sumair Ali was the president of Plaintiff.  For convenience, the term "ALI" is used herein to refer to Plaintiff and/or Sumair Ali, as appropriate from the context, without implying that Plaintiff and ALI are anything other than separate entities under the law.

4.     Upon information and belief, Government Employees Insurance Company is a foreign corporation that is organized under Maryland law and is doing business in Texas.  Government Employees Insurance Company may be served through its registered agent on file with the Texas Department of Insurance, Shane Wheeler, 2280 N. Greenville Ave, Richardson, TX, 75082-4412, or as otherwise allowed by law.

5.     Upon information and belief, GIA is a foreign limited liability company that is organized under Maryland law and is doing business in Texas.  Government Employees Insurance Company may be served through its registered agent on file with the Texas Secretary of State, CT Corporation System, 1999 Bryan St., Ste. 900, Dallas, TX 75201-3136, or as otherwise allowed by law.

Copy from re:SearchTX

### III.	JURISDICTION AND VENUE

6. The amount in controversy is within the jurisdictional limits of this Court, and the Court has subject matter jurisdiction over this action.

7. Defendants are subject to personal jurisdiction in this Court, as they have done, and continue to do, business in Texas. Among other things, the Defendants entered into an agreement with Plaintiff, a Texas resident, which contemplated performance in Texas.

8. Venue is proper under Texas Civil Practice & Remedies Code section 15.002(a)(1) because all or a substantial part of the events and/or omissions giving rise to this action occurred in Collin County, Texas.  In addition, upon information and belief, Defendants have their principal offices in this state in Collin County.

### IV.	FACTUAL BACKGROUND

9. This action arises from a GEICO FIELD REPRESENTATIVE AGREEMENT ("GFR Agreement") between Plaintiff and Government Employees Insurance Group on behalf of itself, GIA, and various "Unaffiliated Insurers" (collectively "GEICO"), which was dated December 13, 2020 and which was terminated by GEICO on or about November 27, 2021.

10. Prior to signing the GFR Agreement, ALI and GEICO had maintained a long and productive relationship since 2014, when ALI was an intern during college.

11. During that time, ALI became familiar with GEICO's business model, its course of dealing between GEICO and its GFRs and customers, and the payment of commissions to the GFRs.

Copy from re:SearchTX

12. In particular, ALI was aware that the bulk of the insurance policies were effectively renewed automatically by the customers, without need for the GFR to participate in the renewal process, and that GEICO's historical renewal numbers allow for calculation of future renewal rates with a reasonable degree of specificity for each type of product. Therefore, GEICO paid renewal commissions to the GFR who originally procured each policy, without regard to whether the GFR participated in the renewal of the policy.

13. Furthermore, in recent years, GEICO adopted an auto-renewal process whereby policy renewal is not only effectively automatic, but is literally automatic. Under this process, a customer may choose to have policies renewed automatically without any action from the customer, and GEICO encourages its GFRs to have customers opt-in to the process. The sole consideration for the GFRs to obtain such opt-in is provided by the future renewal commissions, and all necessary acts by a GFR occur at the time the original policy is procured.

14. In 2020, ALI was being recruited for a GFR position, and a GEICO recruiter insisted that ALI obtain a long-term lease on a large, high-visibility office space. This requirement was specifically for the benefit of GEICO, and the size of the office and length of the lease would not have been appropriate for a non-GEICO affiliated independent office. The lease specifically anticipated that it would be used as an office for the sale of GEICO products, and GEICO reviewed and approved the lease. Subsequently, GEICO represented to the public that the office was a "GEICO office"—not merely an office of an independent agent selling GEICO products—including post-termination representations that the "GEICO office" at 3530 West University Drive was "closed November 26, 2021."

Copy from re:SearchTX

15. On or about December 13, 2020, ALI and GEICO signed the GFR Agreement, which was drafted by GEICO, and which incorporated various schedules of commissions. The GFR Agreement provided for commissions on both "GEICO issued policies" and "Unaffiliated Insurer issued policies."

16. For commissions on original policies, GEICO's course of dealing and representations indicated that a policy was considered sold (and thus the right to commission vested) on the "bound" date.

17. Consistent with ALI's observations of GEICO's practices regarding renewals, the GFR Agreement also provided for renewal commissions. As an example, on GEICO-issued automobile policies, the initial commission schedules initially provided that GEICO was to pay renewal commissions for the 2d, 3d, and 4th years of the policy. GEICO subsequently altered the rates and time periods in the commission schedules, but the schedules continued to provide for payment of renewal commissions, without any requirement that the GFR procure the renewals or take any other continuing action to obtain the renewals.

18. The contractual language and GEICO's practice of paying renewal commissions were both consistent with representations of GEICO's management, and the practice was confirmed by GEICO's payment of commissions under the agreement. Thus, the GFR Agreement provided that ALI was entitled to commissions on all future renewals on policies that were initially procured during the term of the GFR agreement, without any requirement that ALI participate in procuring the renewals.

19. After signing the GFR agreement, ALI spent over $100,000 in completing a GEICO-required build-out, and then began active operations in March 2021, which continued until GEICO terminated the contract.

5

20.     During this period, ALI repeatedly received communications indicating that ALI was doing a great job and was one of the top offices in the State of Texas.  This fact was confirmed by GEICO's statistical metrics, as ALI exceeded GEICO's plan numbers and ranked highly in all six of the major categories of plan numbers, despite being a new office.

21.     Nevertheless, after essentially spending ALI's life savings and an untold number of hours in successfully building GEICO's brand, ALI was abruptly terminated without cause.  More specifically, on October 28, 2021, ALI received a phone call from GEICO management stating that the GFR Agreement would be terminated without cause in 30 days.  When asked why GEICO was terminating the agreement, GEICO stated only that ALI was "not a good fit." Requests for additional explanation were unavailing, as GEICO would only say the termination was without cause.

22.     On October 29, 2021, ALI received a letter via FedEx, dated 10/27/21, confirming that the termination without cause was to be effective at 12:00 a.m. on November 27, 2021.

23.     Shortly after sending notice of the termination without cause, GEICO made clear that it would not pay all contractually-required commissions.  For instance, in November 2021, Ryan Dunham informed ALI that GEICO would not pay commissions on future renewals.  He subsequently confirmed that position in emails on November 12 and 15, 2021, which were also sent to other members of GEICO's management team.  GEICO did not correct or alter its position by November 27, 2021.

24.     In addition, GEICO indicated in November 2021 that it would not pay commissions on the production of policies with an "effective date" after the date of termination, even if they were procured before termination.

Copy from re:SearchTX

25. All conditions precedent necessary to maintain this action have been performed or have occurred.

## V. CLAIMS FOR RELIEF

26. Plaintiff incorporates the foregoing allegations as if set forth fully in each count.

### A. Count 1: Breach of Contract (Renewal Commissions)

27. Under the GFR Agreement, Plaintiff was entitled to renewal commissions.

28. Via telephone and email communications in November 2021, GEICO indicated it would not pay commissions on future renewals.

29. Therefore, by November 27, 2021, GEICO had either breached or anticipatorily breached the GFR Agreement regarding renewal commissions.

30. Plaintiff is entitled to the benefit of its bargain, consisting of the present value of the future renewal commissions that would have been expected at the time of termination, together with pre-judgment interest, post-judgment interest, and attorney fees to the extent allowed by law, and any other legal or equitable relief to which it may show itself entitled.

### B. Count 2: Breach of Contract (Original Commissions)

31. Under the GFR Agreement, Plaintiff was entitled to original commissions on new policies.

32. GEICO's course of dealing and representations indicated that a policy was considered sold (and thus the right to commission vested) on the "bound" date.

33. As such, ALI was entitled to commission on all new policies with a "bound" date on or before the date of termination.

7

Copy from re:SearchTX

34.     However, GEICO indicated in November 2021 that it would not pay commissions on policies with an "effective date" after the date of termination, even if they were sold before termination.

35.     Therefore, by November 27, 2021, GEICO had either breached or anticipatorily breached the GFR Agreement regarding commissions on new policies.

36.     Plaintiff is entitled to the benefit of its bargain, consisting of the value of the unpaid commissions on new policies that were produced within the contractual period, even if the "effective date" fell after the termination date.

**VI.     JURY DEMAND**

37.     Plaintiff requests a jury trial, and herewith tenders a jury fee with the filing of this petition.

**VII.    NOTICE OF INTENT**

38.     Plaintiff hereby gives notice of intent to utilize items produced in discovery in the trial of this matter and the authenticity of such items is self-proven per the Texas Rules of Civil Procedure 193.7.

**VIII.   PRAYER**

WHEREFORE, Plaintiff prays for all relief, at law or in equity, to which Plaintiff is justly entitled.

Dated: March 28, 2022          By: /s/ William D. Tayloor
                               William D. Taylor (TX Bar No. 24046954)
                               TAYLOR & TAYLOR LAW, P.C.
                               4115 Highgrove Drive
                               Arlington, TX 76001
                               Telephone: (817) 483-8388
                               Fax: (817) 483-4890
                               Email: wtaylor@taylorandtaylorlaw.com
                               *ATTORNEY FOR PLAINTIFF*

Copy from re:SearchTX